# IN THE UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF ARKANSAS

**Temple Darlene Peacock**                                                                 **Plaintiff**

**v.**                         **No. 5:14-CV–174-BSM-JTR**

**Carolyn W. Colvin, Acting Commissioner,**
**Social Security Administration**                                                         **Defendant**

## Recommended Disposition

### Instructions

The following Recommended Disposition ("Recommendation") has been sent to United States District Judge Brian S. Miller. You may file written objections to all or part of this Recommendation. If you do so, those objections must: (1) specifically explain the factual and/or legal basis for your objection; and (2) be received by the Clerk of this Court within fourteen (14) days of the entry of this Recommendation. The failure to timely file objections may result in waiver of the right to appeal questions of fact.

### Reasoning for Recommended Disposition

Temple Darlene Peacock seeks judicial review of the denial of her application for supplemental security income (SSI).[1]  Peacock last worked as a grocery store

---

[1] SSA record at p. 119 (applying on Mar. 21, 2012 and alleging disability beginning Mar. 9, 2012).  Agency records indicate Peacock has applied twice before: the first time alleging disability beginning Apr. 1, 2003 and the second time alleging disability beginning Aug. 2, 2005.  *Id.* at p. 126.

cashier.² She quit her job because of a conflict with her manager,³ but she claims she has been disabled since that time. Peacock bases disability on seizures, curvature of the spine, bulging discs, neck pain, and right hip pain.⁴

**The Commissioner's decision**. After considering the application, the Commissioner's ALJ determined Peacock has severe impairments — degenerative disc disease of lumbar spine, degenerative disc disease of cervical spine, and seizure disorder⁵ — but she can do some light work.⁶ Because a vocational expert identified available light work,⁷ the ALJ determined Peacock is not disabled and denied the application.⁸

After the Appeals Council denied review,⁹ the ALJ's decision became the

---

²*Id*. at pp. 141 & 148.

³*Id*. at p. 140 (reporting that she stopped working on Mar. 9, 2012 because she had conflicts with her manager). *See id*. at p. 33 (testifying that she quit because her manager was mean and she was being discriminated against).

⁴*Id*. at p. 140.

⁵*Id*. at p. 15.

⁶*Id*. at p. 17.

⁷*Id*. at p. 55.

⁸*Id*. at p. 21.

⁹*Id*. at p. 1.

Commissioner's final decision for the purpose of judicial review.[10] Peacock filed this case to challenge the decision.[11] In reviewing the decision, the court must determine whether substantial evidence supports the decision and whether the ALJ made a legal error.[12] This recommendation explains why substantial evidence supports the decision and why the ALJ made no legal error.

**Peacock's allegations**. Peacock generally challenges the determination that she can do some light work. She contends the ALJ failed to conduct a function-by-function analysis of her ability to work. If he had, she argues, the ALJ would have determined that disc protrusion and thecal sac compression prevent her from doing light work. She contends the ALJ should have included limitations in using her arms. She claims the ALJ "cherry picked" from the psychological examiner's report and omitted her mental limitations. These omissions, she says, resulted in a deficient

---

[10]*See Anderson v. Sullivan*, 959 F.2d 690, 692 (8th Cir. 1992) (stating that "the Social Security Act precludes general federal subject matter jurisdiction until administrative remedies have been exhausted" and explaining that the Commissioner's appeal procedure permits claimants to appeal only final decisions).

[11]Docket entry # 1.

[12]*See* 42 U.S.C. § 405(g) (requiring the district court to determine whether the Commissioner's findings are supported by substantial evidence and whether the Commissioner conformed with applicable regulations); *Long v. Chater*, 108 F.3d 185, 187 (8th Cir. 1997) ("We will uphold the Commissioner's decision to deny an applicant disability benefits if the decision is not based on legal error and if there is substantial evidence in the record as a whole to support the conclusion that the claimant was not disabled.").

hypothetical question. For these reasons, she maintains substantial evidence does not support the ALJ's decision.[13]

**Applicable legal principles**. For substantial evidence to support the decision, a reasonable mind must accept the evidence as adequate to show Peacock can do some light work.[14] "Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds."[15] The ALJ placed the following limitations on light work:

(1) occasional stooping, crouching, crawling, and overhead reaching; and

(2) no unprotected heights, dangerous machinery, firearms, or driving.[16]

The question for the court is whether a reasonable mind would accept the evidence as adequate to show Peacock can work within these limitations. For the following reasons, a reasonable mind would accept the evidence as adequate:

1. **Peacock's treatment history suggests no disabling pain**. Peacock bases her claim, in substantial part, on neck and back pain. Diagnostic imaging shows

---

[13]Docket entry # 16.

[14]*See Britton v. Sullivan*, 908 F.2d 328, 330 (8th Cir. 1990) ("Substantial evidence 'means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'") (internal citation omitted).

[15]20 C.F.R. § 416.967(b).

[16]SSA record at p. 17.

degenerative changes in the cervical and lumbar spines.[17] According to her neurosurgeon, the imaging "do[es] not show anything significant,"[18] but the degenerative changes probably cause can some neck and back pain. The neurosurgeon referred Peacock to a pain specialist.[19]

The pain specialist prescribed pain medication.[20] The pain medication controlled Peacock's pain.[21] With treatment, range of motion in the neck and low back improved.[22] This improvement supports the ALJ's finding that Peacock's pain was not disabling — an "impairment which can be controlled by treatment or medication is not considered disabling."[23]

Since applying for SSI, Peacock sought pain medication once.[24] When asked about that effort, she explained that she was already at the medical facility to obtain

---

[17]*Id*. at pp. 215-18. *See also id*. at pp. 267-68.

[18]*Id*. at p. 212.

[19]*Id*.

[20]*Id*. at p. 240.

[21]*Id*. at pp. 233 & 237.

[22]*Compare id*. at p. 240 *with id*. at p. 232.

[23]*Estes v. Barnhart*, 275 F.3d 722, 725 (8th Cir. 2002).

[24]SSA record at p. 263.

diagnostic imaging.[25]  Peacock attributes the lack of treatment to the loss of Medicaid coverage.[26]  Lack of resources like health insurance can sometimes justify the failure to seek treatment, but Peacock's doctor offered to assist her in obtaining medication through a prescription assistance program.[27]  The record reflects no visits to indigent care clinics.  Peacock spends her limited resources on things other than medication.[28]

Although lacking health insurance, Peacock would need medical treatment if her pain was severe as she claims.  Seeking treatment once — during in the 12 months for SSI was denied — suggests no disabling pain.[29]  A reasonable mind would accept

---

[25]*Id*. at p. 36.  *See also id*. at p. 265.

[26]*Id*. at pp. 35, 46, 248 & 269.

[27]*Id*. at p. 251.

[28]*Id*. at pp. 234, 306, 362 & 445 (positive for marijuana), p. 239 (smokes .5 pack per day), p. 243 (not interested in smoking cessation; crack cocaine use about one month ago) & p. 263 (still smoking).

[29]*Gwathney v. Chater*, 104 F.3d 1043, 1045 (8th Cir. 1997) (failing to seek medical assistance for alleged physical and mental impairments contradicted claimant's allegations of disabling conditions and supported unfavorable decision); *Ostronski v. Chater*, 94 F.3d 413, 419 (8th Cir. 1996) (complaints of disabling pain and functional limitations are inconsistent with the failure to take prescription pain medication or to seek regular medical treatment for symptoms); *Haynes v. Shalala*, 26 F.3d 812, 814-15 (8th Cir. 1994) ("A lack of strong pain medication is inconsistent with subjective complaints of disabling pain."); *Rautio v. Bowen*, 862 F.2d 176, 179 (8th Cir. 1988) ("A failure to seek aggressive treatment is not suggestive of disabling back pain.").

the treatment history as adequate to support the ALJ's decision.[30]

2. **Expert medical opinion supports the decision**. "The opinions of doctors who have not examined the claimant ordinarily do not constitute substantial evidence on the record as a whole,"[31] but considered with all of the record evidence, a non-examining physician's opinion is probative of a claimant's ability to work. According to the agency medical expert, Peacock can do medium work.[32] This opinion is probative of Peacock's claim because the expert reviewed the diagnostic imaging of the cervical and lumbar spines, the neurosurgeon's medical findings, and the pain specialist's treatment records. Even though the ALJ reduced Peacock to work to light work, a reasonable mind would view the expert opinion as adequate to support the decision, because a person who can do medium work can do light work.

3. **Seizures can be controlled by medication**. Peacock was treated for a seizure disorder when she had health insurance. Treatment consisted of anti-

---

[30]*Riggins v. Apfel*, 177 F.3d 689, 693 (8th Cir. 1999) (finding claimant's allegation that he could not afford prescribed medication inconsistent the lack of evidence suggesting the claimant sought treatment offered to indigents or gave up smoking to help finance pain medication); *Murphy v. Sullivan*, 953 F.2d 383, 387 (8th Cir. 1992) (rejecting argument based on financial hardship in absence of evidence showing claimant sought low-cost medical treatment or was denied medical care because of her financial condition).

[31]*Nevland v. Apfel*, 204 F.3d 853, 858 (8th Cir. 2000).

[32]SSA record at p. 303.

convulsant medication. The medication controlled the seizures.[33] Peacock stopped taking the medication when she lost Medicaid coverage. Treatment records document no seizure activity during the time period for which SSI was denied. A reasonable mind would accept the evidence as adequate to support the ALJ's decision because treatment controls the seizure disorder and Peacock had no seizures during the time period for SSI was denied. To the extent Peacock faces a risk of seizures, the ALJ eliminated work posing hazards — unprotected heights, dangerous machinery, firearms, and driving.[34]

4. **Peacock worked with her impairments**. "As is true in many disability cases, there is no doubt that the claimant is experiencing pain; the real issue is how severe that pain is."[35] The degenerative changes in the spine probably cause some neck and back pain, but Peacock worked with the pain. She quit working for reasons

---

[33]*Id*. at pp. 39 & 269.

[34]Even if seizures posed a disability, they provide no basis for SSI because Peacock attributed her seizures to cocaine addiction. *Id*. at p. 271. *See also Brueggemann v. Barnhart*, 348 F.3d 689, 694 (8th Cir. 2003) ("Substance use disorders are simply not among the evidentiary factors our precedents and the regulations identify as probative when an ALJ evaluates a physician's expert opinion in the initial determination of the claimant's disability.").

[35]*Thomas v. Sullivan*, 928 F.2d 255, 259 (8th Cir. 1991).

unrelated to pain.[36] Her reason for no longer working is probative of her claim because it indicates her pain is not disabling.

In addition, Peacock's work history suggests little motivation for working. An ALJ may consider a claimant's prior work history in evaluating a claimant's credibility.[37] Peacock was 42 years old when she claims she became unable to work, but she has never engaged in substantial gainful activity.[38] In the absence of physical or mental impairment, a history of no substantial gainful activity suggests little motivation to work. A reasonable mind would view Peacock's work history as supporting the decision.

5. **The record suggests no significant mental impairment**. For judicial review, Peacock suggests she has mental impairment, but she didn't base her claim on mental impairment. The psychological examiner reported no impairment, except to state that Peacock "may not be able to complete work tasks within an acceptable

---

[36]SSA record at p. 140 (reporting that she stopped working on Mar. 9, 2012 because she had conflicts with her manager). *See id*. at p. 33 (testifying that she quit because her manager was mean and she was being discriminated against).

[37]*Polaski v. Heckler*, 739 F.2d 1320, 1322 (8th Cir. 1984).

[38]SSA record at p. 126 (earnings history). The first step of the disability-determination process is determining whether the claimant is engaging in substantial gainful activity; if the claimant is engaging in substantial gainful activity, she is not eligible for disability benefits. 20 C.F.R. § 416.920(a)(4). The primary consideration in determining what constitutes substantial gainful activity is earnings derived from work activity. 20 C.F.R. § 416.974(a)(1).

timeframe due to both the pain and seizure disorders."[39] At that time, Peacock received no treatment for pain or seizures. Despite the examiner's diagnosis of pain disorder,[40] Peacock displayed no pain during her evaluation;[41] medication controls Peacock's pain and seizures. A reasonable mind would accept the evidence as adequate to support the ALJ's decision. There is no indication the ALJ cherry-picked the psychological examiner's report.

6. **The ALJ conducted a function-by-function analysis**. The Commissioner's regulations instruct the ALJ to assess a claimant's ability to work on a function-by-function basis, to include functions like sitting, standing, walking, lifting, carrying, pushing and pulling.[42] The ALJ addressed Peacock's ability to sit, stand, walk, lift, carry, operate foot controls, stoop, crouch, balance, kneel, crawl, and reach.[43] The ALJ determined Peacock's ability to work is limited by the degenerative changes in the cervical and lumbar spines, and the risk of seizures. As a result, the ALJ limited stooping, crouching, crawling, and overhead reaching — based on the

---

[39]SSA record at p. 276.

[40]*Id*. at p. 274.

[41]*Id*. at p. 271.

[42]SSR 96-8p, *Pol'y Interpretation Ruling Titles II & XVI: Assessing Residual Functional Capacity in Initial Claims*.

[43]SSA record at p. 17.

degenerative changes — and eliminated work involving unprotected heights, dangerous machinery, firearms, or driving — based on the risk of seizures.

Peacock contends the ALJ should have include limitations in sitting, standing, reaching, and completing tasks, but a function-by-function analysis doesn't extend to non-credible allegations. Nothing shows Peacock cannot sit or stand long enough to do light work. Nothing shows additional limitations in reaching, handling, pushing, or pulling. Nothing shows she cannot complete work tasks. The ALJ's function-by-function analysis captured the concrete consequences of Peacock's impairments. Because it captured those consequences, the hypothetical question was proper.[44]

7. **Vocational evidence supports the decision**. The ALJ asked the vocational expert about available light work. The vocational expert identified cashier/checker, assembly machine tender, and small parts packer as available representative work.[45] The vocational expert's testimony supports the ALJ's decision because it shows work exists that Peacock can do, regardless of whether such work exists where she lives, whether a job vacancy exists, or whether she would be hired if she applied for work.[46]

---

[44]*Lacroix v. Barnhart*, 465 F.3d 881, 889-90 (8th Cir. 2006) ("Moreover, the hypothetical question need not frame the claimant's impairments in the specific diagnostic terms used in medical reports, but instead should capture the 'concrete consequences' of those impairments.").

[45]SSA record at p. 55.

[46]42 U.S.C. § 1382c(a)(3)(B) (defining disability).

A reasonable mind would accept the vocational evidence as adequate to show work exists that Peacock can do.

## Conclusion and Recommended Disposition

Substantial evidence supports the ALJ's decision because a reasonable mind would accept the evidence as adequate to support the decision. The ALJ made no legal error. For these reasons, the undersigned magistrate judge recommends DENYING Peacock's request for relief (docket entry # 2) and AFFIRMING the Commissioner's decision.

Dated this 28th day of July, 2015.

_____
United States Magistrate Judge